IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

In Re:

CARY PAUL SHAHID,                                  Case No. 15-30868-HAC

    Debtor.
_____

BANCORPSOUTH BANK,

    Plaintiff,

v.                                                                          Adv. Proc. No. 16-03009

CARY PAUL SHAHID,

    Defendant.

## OPINION

This adversary proceeding is before the Court on the defendant debtor's motion (doc. 41) to dismiss the amended complaint seeking exception from discharge. The plaintiff obtained substantial state court judgments against debtor and alleges that the debtor then undertook a variety of transfers and other actions to avoid collection. The legal issue is whether the debtor's alleged fraudulent transfers and other actions taken <u>after</u> the judgments will support a claim that the judgments are non-dischargeable pursuant to Bankruptcy Code §§ 523(a)(2) and/or (6). For the reasons stated below, the Court finds that they do not.

This Court has jurisdiction under 28 U.S.C. §§ 1334(b) and 157 and the order of reference of the district court. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I), and this Court has authority to enter a final order.

The amended complaint (doc. 24) alleges that in September and October 2011 BancorpSouth Bank ("BCS") obtained two final judgments totaling over $1.8 million against debtor Cary Shahid in Florida state court based on defaulted promissory notes he personally guaranteed. [Doc. 46, ¶ 1.] BCS alleges that Shahid thereafter undertook a host of activities to thwart collection efforts, including setting up new corporate entities and diverting funds into accounts owned by those entities (doc. 24, ¶ 4); causing money owed to him to be paid to another corporation (id., ¶ 5); and causing funds of a corporation in which he owned a 60% interest to be paid to a shell corporation, his girlfriend, other creditors, and himself (id., ¶¶ 7-13).

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), which is applicable pursuant to Federal Rule of Bankruptcy Procedure 7012, a complaint must contain sufficient factual material to state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 566 U.S. 662, 129 S.Ct. 1937, 1949 (2009). In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations (although not legal conclusions) in the complaint as true. Id., 129 S.Ct. at 1949-50.

Bankruptcy Code § 523(a)(6) creates an exception to discharge "for willful and malicious injury by the debtor to another entity or to the property of another entity …." Other courts have held that a debtor's actions which occurred after the debt had been incurred or, as here, after judgment on the debt had already been entered, cannot support a § 523(a)(6) claim because the "injury" is the underlying debt. For example, in In re Best, 109 Fed. Appx. 1 (6th Cir. 2004), the Sixth Circuit held that a debtor's postjudgment efforts to thwart collection of a judgment debt did not render that debt nondischargeable because it was not the postjudgment actions which gave rise to the debt. The facts alleged in this case are similar to those in In re Kirwan, No. 15-14012-MSH, 2016 WL 5110677 (Bankr. D. Mass. 2016). The plaintiffs there obtained substantial state

court judgments against the debtor and a corporation he owned; the debtor then set up another corporation and transferred the old corporation's business and assets to the new one. The court rejected the § 523(a)(6) claim based on transfers occurring after the state court judgment:

> As was the case in Best [supra], the conduct alleged in Count III occurred after the judgments were entered. Thus, any injury resulting from the alleged transfers could not have given rise to the debt at issue, and therefore any injury--even if willful and malicious--cannot render the amount due under the state court judgments nondischargeable under Bankruptcy Code § 523(a)(6).

Id. at *4. The court found that the § 523(a)(6) claims also failed because the plaintiffs did not have any interest in the property that was allegedly fraudulently transferred. Id. at *4. See also Rockstone Capital, LLC v. Walker-Thomas Furniture Co., et al, No. 04-01581, 2007 WL 2071626 (Bankr. D.D.C. 2007) (postjudgment transfers of property on which creditor did not have a lien insufficient for § 523(a)(6) claim).

BCS alleges that Shahid injured its "right to recover amounts he owes it and its right to collect on its judgments." [Doc. 24, ¶ 15.] However, hindering the bank's inchoate "right to recover" or "right to collect" does not constitute a separate injury to it or its property under § 523(a)(6). See In re Saylor, 108 F.3d 219, 221 (9th Cir. 1997) (creditor's potential fraudulent transfer remedies do not constitute "debt" or "property" under § 523(a)(6)).

The cases cited by BCS are distinguishable because they do not involve situations, as here, where the debt sought to be nondischargeable arose before the transfers complained of and the creditor did not have an interest in the transferred property. The creditor's § 523(a)(6) claim against the debtor in In re Jennings, 670 F.3d 1329 (11th Cir. 2012), arose from the fraudulent transfer itself. The creditor had already obtained a fraudulent transfer judgment of $3.9 million before filing the § 523(a)(6) case, and it was that fraud judgment, not the related tort claim judgment of $24.8 million, which was held nondischargeable. The Eleventh Circuit

distinguished Saylor, supra, by noting that the creditor there, as here, did not already have a fraudulent transfer judgment. 670 F.3d at 1333-34. In In re Monson, 522 B.R. 721 (Bankr. N.D. Fla. 2015), the debtor had contractually agreed to liquidate his company's equipment to repay a creditor if the business was not profitable; instead, he opened a new business and moved the equipment to his new business. Unlike the case at hand, the creditor had an interest in the transferred property (reflected by a potentially defective financing statement), and the debtor fraudulently breached his separate obligation to surrender the collateral. Similarly, in In re Garcia, 442 B.R. 848 (Bankr. M.D. Fla. 2011), the debtor agreed to give the home equity lender a security interest in real property but quickly sold it before the mortgage could be recorded and the security interest perfected. The debtor's fraudulent transfer of the bank's collateral was a separate injury to the creditor's property interest which supported a § 523(a)(6) claim. Id. at 852.

Because (1) the debtor's "injury" to BCS resulted from promissory notes and guaranties executed and reduced to judgment before the alleged fraudulent transfers and other activities took place and (2) BCS has not alleged any direct injury to itself or any property in which it held an interest, the Court finds that the motion to dismiss should be granted as to the § 523(a)(6) claim.

BSC's amended complaint also contains a claim for nondischargeability under Code § 523(a)(2). Section 523(a)(2)(A) provides that a debtor is not discharged "from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement representing the debtor's or an insider's financial condition …." [Emphasis added.] The U.S. Supreme Court recently held in Husky Int'l Electric, Inc. v. Ritz, 136 S. Ct. 1581 (2016), that a course of action may constitute fraud under this section and that a specific fraudulent statement

is not required.  However, the court in Husky did not eliminate the "obtained by" requirement of § 523(a)(2)(A); the individual debtor in Husky was not liable on the original trade debt, and his liability to the creditor arose from the fraudulent transfers he caused the original corporate obligor to make.  Husky in dicta may open the door for potential § 523(a)(2) claims against debtor-transferees who have received fraudulently transferred assets.  See Deborah Thorne & Brett Newman, What's Next After Husky v. Ritz:  Has Pandora's Box Been Opened?, 35 Am. Bank. Inst. J. 20 (2016).  However, debtor Shahid here is the alleged fraudulent transferor; with exception of some assets of Eastern Lake Restaurant (doc. 24, ¶ 4), he is alleged to have fraudulently transferred his own assets.

The Supreme Court in Husky did not rule on the "obtained by" issue and remanded the case for further proceedings on that issue.  The case at hand differs because Mr. Shahid was already obligated on the original debt, which is the debt plaintiff seeks to have declared non-dischargeable.  The debtor in Husky was not; his liability arose from the alleged fraudulent transfer.  This Court is not willing to extend the Husky dicta to find that debts "obtained by" Shahid's guaranty of promissory notes and then reduced to judgment can somehow be "re-obtained" and thus rendered nondischargeable by later alleged fraudulent actions.

The two judgments against debtor totaling $1.8 million described in the complaint arose from defendant's guaranty of promissory notes, not from any fraud and not from the alleged later fraudulent transfers and other activities complained of.  The debts represented by the judgments were thus not "obtained by" fraud -- whether a course of action or fraudulent statement.  Even if the "obtained by" fraud requirement was potentially expanded in Husky, where the debtor's liability arose not from the original debt but his later fraudulent transfers, the judgments which the bank seeks to have declared non-dischargeable do not meet that standard.

For the reasons stated above, the Court will enter a separate order granting the motion to dismiss the amended complaint.

Dated:  November 3, 2016

/s/ Henry A. Callaway
HENRY A. CALLAWAY
U.S. BANKRUPTCY JUDGE